IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-415-BO

| | |
|---|---|
| HENRY A. CUMBEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [D.E. 15, 18]. On February 21, 2018, the court held a hearing on this matter in Raleigh, North Carolina [D.E. 26]. For the following reasons, this matter is REMANDED for further consideration by the Commissioner.

## BACKGROUND

On May 11, 2011, plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act ("Act") and supplemental security income benefits under Title XVI of the Act. [Tr. 327–341]. Plaintiff alleged a disability onset date of December 15, 2010. [Tr. 149]. Plaintiff's applications were denied initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). [Tr. 169–187].

On April 17, 2013, the ALJ held a hearing to consider plaintiff's claims *de novo*. [Tr. 69–102]. On May 30, 2013, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. [Tr. 146-163]. Plaintiff appealed and, on August 28, 2014, the Appeals Council remanded plaintiff's claim for further proceedings. [Tr. 164–168, 256–257].

On April 9, 2015, the ALJ held a second hearing to consider *de novo* plaintiff's remanded claims. [Tr. 35–68]. The ALJ issued an unfavorable decision on June 16, 2015. [Tr. 12–34]. Plaintiff again appealed and, on October 31, 2016, the Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. [Tr. 1–5, 9–11]. On December 21, 2016, plaintiff filed a complaint in this court seeking review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). [D.E. 5].

## **LEGAL STANDARD**

A district court's review of the Commissioner's final decision is limited to determining whether the correct legal standard was applied and whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation and citation omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision "must build an accurate and logical bridge from the evidence to his conclusion" and also must "include a narrative discussion describing how the evidence supports each conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189–90 (4th Cir. 2016) (citations and quotation marks omitted).

Under the Act, an individual is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). Further:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other line of substantial gainful work . . . .

42 U.S.C. § 1382c(a)(3)(B).

The ALJ engages in a sequential five-step evaluation process to make an initial disability determination. 20 C.F.R. § 404.1520(a); *see Johnson*, 434 F.3d at 653. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If a decision regarding the claimant's disability can be made at any step of the process, the ALJ's inquiry ceases. 20 C.F.R. § 404.1520(a)(4).

When evaluating adults, the ALJ denies the claim at step one if the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). At step two, the ALJ denies the claim if the claimant does not have a severe impairment or combination of impairments significantly limiting him from performing basic work activities. *Id.* At step three, the ALJ compares the claimant's impairment to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed, or equivalent to a listed impairment, disability is conclusively presumed without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). However, if the impairment does not meet or equal a listed impairment, the ALJ then makes a residual functional capacity ("RFC") finding. 20 C.F.R. § 404.1545(e).

An RFC finding considers both severe and non-severe impairments, and any combination thereof, and takes into account both objective medical evidence as well as subjective complaints

of pain and limitations. *Id.* The ALJ considers the claimant's ability to meet the physical, mental, sensory, and other requirements of accomplishing work. 20 C.F.R. § 404.1545(a)(4). An RFC finding is meant to reflect the most that a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1). An RFC finding should also reflect the claimant's ability to perform sustained work-related activities in a work setting on regular and continuing basis, meaning eight-hours per day, and five days per week. *See* SSR 96-8p; *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).

At step four, the ALJ considers a claimant's RFC to determine whether he can perform past relevant work ("PRW") despite his impairments. 20 C.F.R. § 416.920(a)(4). If not, the ALJ proceeds to step five of the analysis: establishing whether the claimant–based on his RFC, age, education, and work experience–can make an adjustment to perform other work. *Id.* If the claimant cannot perform other work, the ALJ finds him disabled. *Id.*

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity the alleged onset date of December 15, 2010. [Tr. 17]. At step two, the ALJ enumerated plaintiff's severe impairments, including: degenerative disc disease ("DDD"), fibromyalgia, gastroesophageal reflux disease ("GERD"), hypertension, and obesity. [Tr. 17–19]. The ALJ also found non-severe plaintiff's medically determinable mental impairment (depression/anxiety) because the condition causes: no more than minimal limitation of his ability to perform basic work activities; no more than mild limitation in the three functional areas; and no extended episodes of decompensation. [Tr. 18–19]. At step three, the ALJ found that none of plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 19–20].

4

The ALJ found that plaintiff had the RFC to perform light work with the following restrictions: "claimant can perform occasional climbing, crawling, kneeling, and crouching. He must avoid all exposure to workplace hazards." [Tr. 20]. On the basis of this RFC, and pursuant to vocational expert ("VE") testimony, the ALJ noted at the hearing on April 9, 2015, that plaintiff could not perform his former past relevant work ("PRW") as a special education teacher. [Tr. 59]. However, the VE testimony indicated that plaintiff could still perform jobs, including: Case Aide (DOT # 195.367-010), with 4,400 jobs in North Carolina and approximately 117,000 jobs in the national economy; Office Helper (DOT #239.567-010), with 5,500 jobs in North Carolina and 239,000 jobs in the national economy; and Information Clerk (DOT #237.367-018), with 1,200 jobs in North Carolina and 59,000 jobs in the national economy. [Tr. 60].

At step four, the ALJ reiterated a finding that plaintiff was unable to resume his PRW. [Tr. 26]. At step five–in reliance upon the VE's testimony regarding alternative jobs that plaintiff could perform, and after considering plaintiff's age, education, work experience, and RFC–the ALJ determined that plaintiff was not disabled within the meaning of the Act. [Tr. 26–27].

## ARGUMENTS

Plaintiff argues that the ALJ's finding that plaintiff maintains the RFC for light work with additional restrictions is not supported by substantial evidence. *See* [D.E. 16] at 9–11. Plaintiff contends that the ALJ failed to properly assess his credibility. *Id.* at 11–14. Plaintiff also contends that the ALJ failed to properly assess the opinion of Stephen Grubb, M.D. ("Dr. Grubb"), plaintiff's treating physician. *Id.* at 15–17. Plaintiff asserts that record medical evidence shows that he is incapable of performing the full range of sedentary work and should be

found disabled pursuant to the Act. *Id.* at 17. Finally, plaintiff argues that the VE's testimony conflicts with the ALJ's step-five finding that there is other work in the economy that plaintiff can perform. *Id.* at 17–18.

Defendant argues that the Commissioner's determination–that plaintiff was not disabled with the meaning of the Act–was supported by substantial evidence. [Tr. 19] at 5. Specifically, defendant argues that the ALJ properly found that plaintiff's pain was not as severe as was alleged. *Id.* at 7. Defendant contends that the ALJ properly assigned less weight to Dr. Grubb's opinions because these opinions were not supported by clinical evidence and were inconsistent with other medical findings. *Id.* at 7–8. Defendant urges that the medical evidence of record indicates that plaintiff's impairments were not so incapacitating as either plaintiff or Dr. Grubb suggest because: plaintiff was able to do exercise; plaintiff regularly denied the symptoms of fibromyalgia including joint pain, joint swelling, muscle pain, and muscle cramps; plaintiff did not continue taking medications that were improving his fibromyalgia condition; and Dr. Grubb's opinions appear to be based on plaintiff's self-reporting rather than observable medical tests/diagnoses. *Id.* at 8–10.

## DISCUSSION

The court first considers plaintiff's argument that the ALJ gave improper weight to the opinions of Dr. Grubb. *See* [D.E. 16] at 15–17. An ALJ is entitled to give little weight to a medical opinion. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (noting that "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). However, an

ALJ must apply various factors and give "good reasons" for not assigning controlling weight to a treating physician's opinion, 20 C.F.R. § 404.1527(c)(2), and an ALJ may not reject medical evidence for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).

The record reflects that Dr. Grubb regularly treated plaintiff for several years. In November 2010, Dr. Grubb diagnosed plaintiff with cervical and lumbar DDD. [Tr. 514]. In April 2012, Dr. Grubb noted tenderness up and down plaintiff's spine and "marked tenderness" in a neuromuscular examination. [Tr. 617]. On April 23, 2012, Dr. Grubb completed two opinions that reiterated a diagnosis of cervical and lumbar DDD, added a diagnosis of fibromyalgia, opined that plaintiff was unable to work, and reported that plaintiff could only sit for four hours a day, stand for two hours a day, and walk for four hours a day. *See* [Tr. 536–37, 538–39]. In May 2012, Dr. Grubb found tenderness at fibromyalgia areas and noted that plaintiff was fatigued after two hours of work. [Tr. 611]. In August 2012, Dr. Grubb: noted "exquisite tenderness in all fibromyalgia points;" recorded plaintiff's report that he continued to experience back pain and headaches; and noted that, although plaintiff's prescriptions for Cymbalta and Neurotin were helping, he was still fatigued after one hour of work. [Tr. 606–08]. In November 2012, Dr. Grubb found that plaintiff's fibromyalgia resulted in headaches and was severe. [Tr. 540]. On April 15, 2013, Dr. Grubb noted that plaintiff's fibromyalgia: caused severe fatigue and severe, diffuse muscle pain; required him to recline throughout the day; and prevented plaintiff from sitting or standing for six hours a day or lifting 20 pounds. [Tr. 632-633]. On April 22, 2013, Dr. Grubb found that plaintiff had tenderness in all fibromyalgia points. [Tr. 681]. In November 2013, Dr. Grubb noted tenderness in plaintiff's low back and in all fibromyalgia points, and administered a steroid injection. [Tr. 649–50]. On February 26, 2014, Dr. Grubb again found tenderness in all fibromyalgia points. [Tr. 637]. On March 2, 2015, Dr.

7

Grubb found that plaintiff: had severe tenderness in all fibromyalgia points; was unable to walk more than half a block without resting; required a scooter when shopping; and was unable to sit for an hour at a time without changing positions. [Tr. 635–36].

The first error is patent; although the ALJ noted the existence of Dr. Grubb's March 2015 opinion [Tr. 23], the ALJ did not further discuss this opinion or the weight that would be assigned to it. This oversight frustrates meaningful review, thereby precluding the court from determining whether the ALJ's decision is supported by substantial evidence. *See Perales*, 402 U.S. at 401; *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

The court further finds that the ALJ's justifications for rejecting Dr. Grubb's other opinions regarding plaintiff's fibromyalgia are insufficiently explained. As an initial matter, the ALJ does not dispute Dr. Grubb's lengthy treatment relationship as plaintiff's primary care physician. *Cf.* 20 C.F.R. § 404.1527(c)(2)(i), (ii). Nor does the ALJ cite to "persuasive contrary evidence" indicating that plaintiff does not have fibromyalgia or that the conditions is non-severe. *Cf. Mastro*, 270 F.3d at 178. Rather, the ALJ's objections essentially amount to concerns that Dr. Grubb's opinions: are too favorable to plaintiff; utilize check-box format; and/or were offered at the behest of plaintiff's legal counsel or a county's department of social services. [Tr. 25–26].

Although the ALJ finds Dr. Grubb's April 2012 opinions "largely inconsistent," [Tr. 25], these opinions appear to differ only in the anticipated duration of the disability, *compare* [Tr. 537] (finding plaintiff ready for retraining), *with* [Tr. 539] (indicating that plaintiff's condition will totally and permanently limit his ability to engage in work or training). It is unclear to the

8

court whether these two opinions sharing the same date indicate either inconsistency in diagnosis or, perhaps more likely, an adjustment of a medical opinion followed by an inadvertent double filing.

The ALJ also cites Dr. Grubb's failure to refer plaintiff to a rheumatologist or recommend an "aggressive exercise regimen" as reasons to doubt his opinions. [Tr. 26]. In making this finding, however, the ALJ impermissibly substitutes his own "medical knowledge" for that of a treating physician. *See, e.g., Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion.").

To the extent that the ALJ takes issue with Dr. Grubb's failure to record the results of a musculoskeletal examination while recording tenderness in all fibromyalgia points in the February 2014 examination, *see* [Tr. 23], the Social Security Ruling for evaluating fibromyalgia does not require a musculoskeletal examination. *See* SSR 12-2p, 2012 WL 3104869, at *2–3 (S.S.A. July 25, 2012) (allowing application of either the "tender point cite" testing of the "1990 ACR Criteria for the Classification of Fibromyalgia" or the "2010 ACR Preliminary Diagnostic Criteria").

To the extent that the ALJ found Dr. Grubb's opinions were insufficiently detailed to determine whether plaintiff's fibromyalgia is disabling, or otherwise were inconsistent, the ALJ is empowered to, among other things, contact the treating source, request additional records, ask the claimant or others for additional information, and/or purchase a consultative examination. *See* SSR 12-2p, 2012 WL 3104869, at *4 (citing 20 C.F.R. §§ 404.1520b(c), 416.920b(c)). The ALJ's opinion does not indicate that any of these remedial steps were taken.

Defendant argues that the ALJ's finding is supported the fact that plaintiff discontinued taking the medication that was improving his fibromyalgia condition. [D.E. 19] at 8–9. However, the record reflects that plaintiff was un-insured and unable to afford fibromyalgia medication. *See* [Tr. 636]. Although Dr. Grubb encouraged plaintiff to seek-out assistance from pharmaceutical websites, *see id.*, this does not indicate that plaintiff failed to explore the possibility of subsidized treatment, *c.f.* SSR 82–59, 1982 WL 31384, at *4, and non-compliance with a treatment regimen due to inability to pay cannot be held against a claimant, *see Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.").

In contrast to the little weight given to Dr. Grubb's opinions, the ALJ gave significant weight to the opinion of examiner Dorothy Linster, M.D. ("Dr. Linster"), finding that plaintiff could perform medium work [Tr. 24] (citing [Tr. 128–43]). However, Dr. Linster's opinion discusses only plaintiff's chronic back pain and hypertension. *See* [Tr. 128–43]. In light of the inadequacy of the ALJ's reasons for rejecting Dr. Grubb's fibromyalgia opinions, and because Dr. Linster's opinion does not address fibromyalgia, the court again finds that it cannot effectively review the ALJ's administrative decision as to fibromyalgia. *See DeLoatche*, 715 F.2d at 150.

Because the ALJ did not adequately address Dr. Grubb's fibromyalgia opinions, remand is appropriate for the ALJ to clarify his rationale. *Radford*, 734 F.3d at 296 (noting that remand is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review"); *cf. Craig*, 76 F.3d at 589 (noting that the court must uphold the Commissioner's decision when ALJ findings are "supported by substantial

evidence and were reached through application of the correct legal standard"). Accordingly, the court will exercise its discretion and remand to the Commissioner for additional fact-finding, as necessary, to resolve the matter. *See Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987) ("The decision of whether to reverse and remand for calculation of benefits, or reverse and remand for a new hearing, is one which lies within the sound discretion of the court."). In light of the need for remand, the court need not address plaintiff's additional contentions of error. *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (noting that, because the case was remanded on other grounds, the court need not address claimant's additional arguments).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings [D.E. 15] is GRANTED, the Commissioner's motion on the pleadings [D.E. 18] is DENIED, and the matter is REMANDED to the Commissioner for further proceedings consistent with this decision.

SO ORDERED. This 6 day of March, 2018.

TERRENCE W. BOYLE
United States District Judge